7569.  McKENZIE, executrix, *v.* SMITH.

1. The maker of a promissory note, indorsed by the payee for accommodation, induced a third person, in consideration of $100 paid by the maker, to pay the amount of the note, on the day of its maturity, to a bank that had discounted it, and thus take it up to keep it from going to protest. The accommodation indorser was not a party to this transaction, had no knowledge of it, and did not consent to it. The conduct of the maker and of the person taking up the note operated to discharge the indorser, under the facts in the case.

2. The court charged the jury that the plaintiff contended that he "did pay the amount due on it and had it delivered to him, and that it was not intended, and did not pay off, extinguish, and discharge the note at all—simply paid the amount due on it and had the note delivered to him." This submitted a transaction that could not have legal existence. It doubtless confused the jury and caused them to stray from the true issue in the case. Viewed in the light of the evidence, if the volunteer paid the amount of the note and had it delivered to him, he either purchased the paper or paid the debt. If he purchased the note, the indorser was not discharged. If he paid the debt, the liability of the indorser was extinguished as a matter of law.

DECIDED SEPTEMBER 21, 1916.

Complaint; from city court of Atlanta—Judge Reid.  April 22, 1916.

*King & Spalding,* for plaintiff in error.

*Brandon & Hynds, Virlyn B. Moore,* contra.

HODGES, J.  Brazelton made a note to McKenzie, who indorsed it as an accommodation indorser. The note was discounted by Brazelton with the vice-president of a bank. On the day of maturity Brazelton induced Smith, in consideration of $100, to take up the note, it having been left by Ottley at the bank for collection. Smith paid the money to the teller of the bank and had the note surrendered. It was not marked "Paid." Brazelton assured Smith that he would pay the note in the near future, but no definite time was fixed. Smith sued Brazelton and McKenzie on the note. Brazelton did not defend. McKenzie defended on the ground that the note had been paid off by Smith and that he was

discharged. Pending the suit McKenzie died, and his executrix was made a party. The jury found in favor of the plaintiff. The executrix made a motion for new trial, which was overruled, and she brought the case here for review.

1. In our opinion the transaction in this case amounted in law to a payment of the note and extinguishment of the debt. Smith testified on the trial that Brazelton agreed to give him $100 to "take up the note," that he paid the note and "took up the note," that he did this at Brazelton's request, and was paid $100 by Brazelton for so doing. He further testified that Brazelton did not want McKenzie, the accommodation indorser, embarrassed, and wanted to maintain his own credit at the bank; further, that he had a talk with Ottley, the holder of the paper, about taking up the paper and holding it for a day or so, and Ottley said, "No, the note had to be paid, taken up the day it was due." "He said unless the note was paid it was going to protest." He further testified, as his conclusion, that, "it was agreeable for the note to be taken up." Paschal, the note teller, holding the note for collection, declined to give a written transfer, just delivered the note. Ottley said that unless the note was paid, it was going to protest, and he (the witness) gave the teller a check for the full amount due, and the teller surrendered the note. Brazelton testified, that he gave Smith $100 to take the note out of the bank, to keep the bank from protesting the paper; "I gave him $100 to pay the note." Paschal, the teller, testified, that the Brazelton-McKenzie note was paid by Smith to the bank; that the note had Ottley's indorsement on it, which was scratched off when it was surrendered; the bank was paid. The note belonged to Ottley, and the bank had it for collection. Mr. Ottley was paid and the witness surrendered the note. As teller, he said, he had no authority to sell a note; he collected the note and placed the money to Ottley's credit. The note was not marked "Paid," though generally they are marked "Paid." It is marked "Paid" on the books. It was not a part of the duty of the witness to rediscount papers for the bank. When the money was paid Ottley was credited with the amount.

Now what is the legal result of this evidence? We think that it shows, as a legal conclusion, that Smith, acting for the maker and without the knowledge or consent of the accommodation indorser, paid the note and extinguished the debt, thereby discharg-

ing the accommodation indorser from liability. The holder of the paper before this transaction was Ottley, who had indorsed the note and placed it for collection in the bank. On the day the paper was to mature Ottley was approached and asked to hold it for a day or so, and he declined to do so, saying that unless paid, the note would go to protest. When the money was about to be paid Ottley had his blank indorsement scratched off, evidently not caring to subject himself to the liabilities incident thereto as a vender of the paper, thereby carrying out his original insistence that the note must be paid so far as he was concerned. The witnesses use the terms "take up the note" and "pay the note" as synonymous, and in common parlance they are. In law there may be a distinction in the use of the terms; as, for instance, the statement that an indorser "took up" a paper does not mean that the note was absolutely paid. Hartzell v. McClurg, 54 Neb. 316 (74 N. W. 626). When the real maker of a paper "takes it up" he pays the note and extinguishes the liability of the accommodation indorser. In this case the volunteer, Smith, was instructed by the maker to "take it up, get it out of the bank, pay the note and keep it from going to protest." Certain it is the plaintiff and Brazelton used the terms interchangeably and as used in common parlance. The evidence showed there was no intention on the part of Ottley to sell the note. His sayings and conduct showed the contrary. It was essential, to a sale of this note to Smith, for Ottley to consent to such sale. The evidence shows that Ottley did not agree to sell the paper to Smith. "Where one gave to the maker of a note money to purchase the note from the holder for the person supplying the money, but the maker simply paid the money to the holder and took the note without informing the holder that the money had been sent by him (the maker) to purchase the note, and it did not appear that the holder had any notice of any intention on the part of the first person named, to make a purchase, the transaction amounted in law to a payment and not a sale of the note; to make it a sale required the assent of the minds both of the maker and the holder." Cason v. Heath, 86 Ga. 438 (12 S. E. 678). The evidence showing that Ottley did not agree to sell the paper, the accommodation indorser was discharged by the payment of the note.

2. The main exception to the charge of the court is dealt with

in the second headnote, and no further opinion on that point is necessary.

The verdict was contrary to law, and a new trial should have been granted.                                    *Judgment reversed.*